SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## C.R. v. M.T. (A-47-22) (087887)

**Argued October 24, 2023 -- Decided April 22, 2024**

**WAINER APTER, J., writing for the Court.**

In this appeal, the Court considers the showing required to establish "the possibility of future risk to the safety or well-being of the alleged victim" pursuant to N.J.S.A. 2C:14-16(a)(2) in order to obtain a final protective order under the Sexual Assault Survivor Protection Act of 2015 (SASPA).

Plaintiff "Clara" testified that, in June 2018, she was sexually assaulted by defendant "Martin." Clara applied for a temporary protective order (TPO), and then a final protective order (FPO), under SASPA. After hearing testimony, the trial court made explicit findings under N.J.S.A. 2C:14-16(a)(1) and (2). The court found that (1) Clara had been "subjected to nonconsensual sexual contact within the meaning of SASPA" because her "extreme voluntary intoxication" made it impossible for her to consent to sexual contact; and (2) there was a possibility of future risk to Clara's safety or well-being because Martin had been subjected to legal fees defending against the SASPA FPO and "may now harbor a grudge against [Clara] which would probably not have occurred but for these proceedings." The court therefore issued an FPO directing Martin to have no contact with Clara.

The Appellate Division reversed on the basis of the test the trial court had used to assess consent under N.J.S.A. 2C:14-16(a)(1). 461 N.J. Super. 341, 350-51 (App. Div. 2019). The Court reversed, holding that "the affirmative consent standard . . . is the correct standard to be applied in determining whether sexual activity" was consensual under SASPA. 248 N.J. 428, 431, 445 (2021). The Court noted that the trial court on remand could expand upon its abbreviated discussion of N.J.S.A. 2C:14-16(a)(2). Id. at 448.

On remand, Clara testified that she continued, more than three years later, to be intensely traumatized by the sexual assault. Martin did not testify, electing to rely on his testimony from the initial hearing. The court found Clara's testimony from the first and second hearings "credible and believable" and Martin's testimony from the first hearing "not credible" and "not truthful." On the first factor, N.J.S.A. 2C:14-16(a)(1), the court therefore held that consent to sexual contact "was not

1

affirmatively and freely given." Turning to N.J.S.A. 2C:14-16(a)(2), the court noted that "the statute only requires a possibility, as opposed to a probability." The court found "a significant risk to [Clara's] psychological well-being should this order not remain in effect" and ordered the FPO previously issued to remain in effect.

The Appellate Division affirmed, concluding that "plaintiff satisfied her burden of demonstrating a predicate act as defined under" N.J.S.A. 2C:14-16(a)(1) and that "there exists a possibility of future risk to her safety or well-being as required by" the ordinary terms of -16(a)(2). The Court granted certification limited to the interpretation of N.J.S.A. 2C:14-16(a)(2). 254 N.J. 183 (2023).

**HELD:** The plain language of N.J.S.A. 2C:14-16(a)(2) creates a standard that is permissive and easily satisfied. Here, plaintiff testified that a sexual assault "destroyed" her, she was intensely traumatized, and she was "terrified" for her safety. The family court found her testimony credible. Based on that testimony, the court held plaintiff had demonstrated a "possibility of future risk" to her "safety or well-being." The Court affirms.

1. "Any person alleging to be a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct," who is not eligible for a restraining order as a "victim of domestic violence" under the Prevention of Domestic Violence Act of 1991 (PDVA) may apply for a protective order under SASPA. N.J.S.A. 2C:14-14(a)(1), -16. The standard for granting a SASPA protective order differs depending on whether the applicant seeks a temporary or final order. Importantly, an FPO does not require a showing that it is "necessary to protect the safety and well-being" of the victim like a TPO does, see N.J.S.A. 2C:14-15(a); rather, an FPO requires only the "possibility of future risk to the safety or well-being of the alleged victim," N.J.S.A. 2C:14-16(a)(2). (pp. 14-18)

2. The permissive standards for a SASPA TPO and a PDVA temporary restraining order (TRO) are nearly identical, as are the procedures for seeking a PDVA final restraining order (FRO) and a SASPA FPO. Notably, both SASPA FPOs and PDVA FROs require consideration of a list of non-exhaustive factors, but SASPA lists only two such factors -- "(1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness . . . ; and (2) the possibility of future risk to the safety or well-being of the alleged victim," N.J.S.A. 2C:14-16(a) -- whereas the PDVA lists six, see N.J.S.A. 2C:25-29(a). The Legislature could have duplicated the second factor for a PDVA FRO -- "[t]he existence of immediate danger to person or property," N.J.S.A. 2C:25-29(a)(2) -- in SASPA, but it did not. In addition, the consequences to a defendant of a PDVA FRO are drastically different from the consequences to a respondent of a SASPA FPO. (pp. 18-22)

2

3.  Applying ordinary definitions of the terms used in N.J.S.A. 2C:14-16(a)(2), the statute's plain language requires a court to consider whether there is a chance that a survivor may be exposed to physical danger, risk, or injury, or may be exposed to something emotionally unwelcome or unpleasant that could make the survivor feel uncomfortable, unhealthy, or unhappy.  Because the language of factor two is centered on the safety or well-being of the victim-survivor, a survivor's own testimony regarding possible future risks to their safety or emotional well-being can suffice.  The Court's reading of the plain text of factor two as creating a lenient and easy-to-satisfy standard is reinforced by context:  the "possibility of future risk" required for a SASPA FPO is less demanding than the "necessary" protection required for a SASPA TPO or the "immediate danger" required for a PDVA FRO.  Applying that standard, the Court defers to the trial court's factual findings because they are supported by substantial evidence and finds no error in the court's legal conclusion.  (pp. 22-26)

4.  The Court explains why it is not persuaded by Martin's claims of error, why it disagrees with the concurrence's view of N.J.S.A. 2C:14-16(e) and (f), and why it declines to adopt either the six PDVA factors or the standard established for PDVA FROs for use in the SASPA context.  Finally, the Court explains that its discussion of Clara's testimony is not intended to imply that such evidence of psychological symptoms or treatment is necessary to satisfy N.J.S.A. 2C:14-16(a)(2).  (pp. 26-33)

**AFFIRMED.**

**JUSTICE FASCIALE, concurring,** disagrees that a SASPA FPO requires victims to speculate about the "possibility of future risk to [their] safety or well-being."  In Justice Fasciale's view, once a victim proves by a preponderance of the evidence that a respondent committed a predicate act of "nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct," N.J.S.A. 2C:14-16(a)(1), the victim is <u>automatically</u> entitled to an FPO prohibiting the respondent from contacting the victim and committing further predicate acts, <u>see</u> N.J.S.A. 2C:14-16(e).  Justice Fasciale regards the "possibility" of what may or may not happen in the future, <u>see</u> N.J.S.A. 2C:14-16(a)(2), as a factor to consider when fashioning additional relief in the FPO under N.J.S.A. 2C:14-16(f) rather than an element of proof that a victim must establish to obtain an FPO.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and NORIEGA join in JUSTICE WAINER APTER's opinion. JUSTICE FASCIALE filed a concurrence.**

SUPREME COURT OF NEW JERSEY
A-47 September Term 2022
087887

C.R.,

Plaintiff-Respondent,

v.

M.T.,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| October 24, 2023 | April 22, 2024 |

Leah A. Vassallo argued the cause for appellant (Kennedy & Vassallo, attorneys; Leah A. Vassallo, on the brief).

Cheryl Turk Waraas argued the cause for respondent (South Jersey Legal Services, attorneys; Kenneth M. Goldman, Andrew Vazquez-Schroedinger, Douglas E. Gershuny, on the briefs; and Lindsey Eveland, law student, appearing pursuant to Rule 1:21-3(b), on the briefs).

CJ Griffin argued the cause for amicus curiae Partners for Women and Justice (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the brief).

1

Mary M. McManus-Smith argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; Mary M. McManus-Smith, Shoshana Gross, Monica Gural, and Dawn Miller, on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

This case, now before us for the second time, concerns the requirements for a final protective order under the Sexual Assault Survivor Protection Act of 2015 (SASPA), N.J.S.A. 2C:14-13 to -21 (2023).[1]  SASPA directs that in determining whether to issue a final protective order, "the court shall consider but not be limited to the following factors:  (1) the occurrence of one or more acts of nonconsensual sexual contact [or] sexual penetration . . . against the alleged victim; and (2) the possibility of future risk to the safety or well-being of the alleged victim."  N.J.S.A. 2C:14-16(a).[2]

---

[1]  On July 24, 2023, Governor Murphy signed L. 2023, c. 127 into law, substantially expanding SASPA and renaming it the Victim's Assistance and Survivor Protection Act.  Those amendments went into effect on January 1, 2024.  Because the amendments are not at issue in this case, this opinion relies only on the text of N.J.S.A. 2C:14-13 to -21 in effect prior to January 1, 2024.  All citations to N.J.S.A. 2C:14-13 to -21 are to the pre-amendment language as of December 31, 2023, and this opinion continues to refer to the law as SASPA.

[2]  Although the Sexual Assault Survivor Protection Act is survivor-centered, the text of the law uses the word "victim" or "alleged victim" and not the word "survivor."  See N.J.S.A. 2C:14-13 to -21.  When quoting the statute, we use

2

We hold that the plain language of N.J.S.A. 2C:14-16(a)(2) creates a standard that is permissive and easily satisfied. Here, plaintiff testified that a sexual assault "destroyed" her, she was intensely traumatized, and she was "terrified" for her safety. The family court found her testimony credible. Based on that testimony, the court held plaintiff had demonstrated a "possibility of future risk" to her "safety or well-being." We affirm.

I.

A.

We rely on the comprehensive discussion of the facts and procedural history set forth in our first opinion in this case, C.R. v. M.T. (C.R. I), 248 N.J. 428 (2021). We add here only those details necessary to understand the question presented and events that occurred after our remand in C.R. I.

On the evening of June 26, 2018, Clara went out to two bars with her then-best-friend Sylvia.[3] Clara testified that later that night, she was sexually assaulted by Martin, Sylvia's cousin, on the floor of Martin's garage. Martin testified that the sexual penetration was consensual. Clara testified that it was not. Martin never contacted or attempted to contact Clara after the incident.

---

the word "victim" or "alleged victim." Otherwise, we use both "victim" and "survivor."

[3] We refer to the parties and witnesses by the same pseudonyms used in C.R. I.

3

Clara applied for a temporary protective order (TPO), and then a final protective order (FPO), under SASPA. After hearing testimony from Clara, Martin, and Sylvia, the trial court made explicit findings under N.J.S.A. 2C:14-16(a)(1) and (2).[4] The court found that (1) Clara had been "subjected to nonconsensual sexual contact within the meaning of SASPA" because her "extreme voluntary intoxication" made it impossible for her to consent to sexual contact; and (2) there was a possibility of future risk to Clara's safety or well-being because Martin had been subjected to legal fees defending against the SASPA FPO and "may now harbor a grudge against [Clara] which would probably not have occurred but for these proceedings." The court therefore issued an FPO directing Martin to have no contact with Clara.

Martin appealed. The Appellate Division reversed and remanded, directing the trial court to apply the "prostration of faculties" test to determine whether Clara had been sufficiently intoxicated to be incapable of consenting to sexual activity under N.J.S.A. 2C:14-16(a)(1). C.R. v. M.T., 461 N.J. Super. 341, 350-51 (App. Div. 2019).

We granted Clara's petition for certification, 241 N.J. 329 (2020), and reversed the Appellate Division's decision, C.R. I, 248 N.J. at 431. Rather

---

[4] Throughout this litigation, the parties and courts referred to N.J.S.A. 2C:14-16(a)(1) and (2) as the two required "prongs" of SASPA. We call the two provisions "factors," which more precisely reflects the statute's plain text.

4

than the "prostration of faculties" test, we held that "the affirmative consent standard articulated in" State in Interest of M.T.S., 129 N.J. 422 (1992), "is the correct standard to be applied in determining whether sexual activity" was consensual under SASPA. C.R. I, 248 N.J. at 445. Under M.T.S., "any act of sexual penetration engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration constitutes the offense of sexual assault." 129 N.J. at 444. We thus remanded to the trial court "for reconsideration of . . . whether the sexual activity was consensual or nonconsensual" under N.J.S.A. 2C:14-16(a)(1), "utilizing the M.T.S. affirmative consent standard." C.R. I, 248 N.J. at 447.

Although the Appellate Division in C.R. I had not addressed N.J.S.A. 2C:14-16(a)(2), the possibility of future risk to Clara's safety or well-being, see 461 N.J. Super. 341, we discussed it briefly, noting that it would be relevant to the trial court's reconsideration of the FPO on remand. 248 N.J. at 447-48. Recounting the trial court's reasoning, discussed above, that Martin had "through this process been subjected to legal fees and may now harbor a grudge against [Clara] which would probably not have occurred but for these proceedings," we stated:

> It cannot be that simply filing for a protective order is sufficient to create "the possibility of future risk to the safety or well-being of the alleged victim" noted in prong two. If that were so, prong two would

5

be met in <u>every</u> single SASPA case. That could not have been the Legislature's intention.

Here, the factual findings that the trial court put on the record appear to counter [Clara]'s establishing prong two of SASPA, and the trial court relied on the simple fact that [Clara] had sought a restraining order to conclude that "it is more likely than not that a final restraining order is appropriate" in this case. We remand so that the trial court may expand upon its abbreviated discussion of prong two and make additional findings of fact that support a determination either that the prong has been satisfied, or not, in deciding whether to issue the final restraining order.

[<u>Id.</u> at 448.]

B.

On remand before a different judge, Clara testified that she continued, more than three years later, to be intensely traumatized by the sexual assault.

Q. So since this time and after this event occurred [in 2018], how has been your well-being? How have you dealt with this issue?

A. I am affected by what happened every day. I've seen multiple therapists and I lay in bed at night and I can't sleep because I still feel like I'm in the garage sometimes.

I have terrible intimacy issues. I can't date because I don't trust anyone. I don't -- I have a hard time making friends because I don't trust my friends anymore. I -- it destroyed me, honestly.

Like, I've lost my sense of self-worth. I lost everything. I feel like -- some days, I feel like I'll never not be in that garage, honestly. Like, I wonder how I

6

can ever not be traumatized by this and I don't think that's a possibility.

Q. Besides the well-being that you've just explained, if this were (inaudible -- recording issue), do you fear for your safety and the possibility of harm from this Defendant?

A. I do. I really, I do. I think the only reason I have any sort of peace of mind is because I know I have this temporary right now and I'm so terrified that if I didn't have it, he would be angry that I've spent three years just asking for this.

Just asking for a sense of security. I think he would definitely harass me for challenging it. I feel like every time -- I can't even begin to explain the, like, terror that I feel every day when I am unsure of my surroundings.

I can't even -- I have a hard time even going shopping by myself because what if something happens? How will I defend myself? And if there's no protective order, then he has no consequences.

Martin did not testify, electing to rely on his testimony from the initial hearing.

The court found Clara's testimony from the first and second hearings "credible and believable" and Martin's testimony from the first hearing "not credible" and "not truthful." On the first factor, N.J.S.A. 2C:14-16(a)(1), the court therefore held that consent to sexual contact "was not affirmatively and freely given."

Turning to N.J.S.A. 2C:14-16(a)(2), the court noted that "the statute only requires a possibility, as opposed to a probability, of future risk to the safety or

7

well-being of the alleged Victim.  The plain meaning of the word 'possible' subsumes the notion that an event may or may not occur."  Acknowledging that Martin had not attempted to contact Clara in the more than three years since the incident, the court found that did "not foreclose the possibility of risk to [Clara's] safety or her well-being."

The court detailed Clara's testimony, set forth above, about the long-term effects of the incident, including that Clara had seen multiple therapists, had difficulty sleeping, had intimacy issues, and suffered ongoing consequences that were "real and traumatizing."  Without an FPO, the court concluded that any progress Clara had "made in therapy could be eviscerated."  Finding "a significant risk to [Clara's] psychological well-being should this order not remain in effect," the court held that Clara had satisfied N.J.S.A. 2C:14-16(a)(2).[5]  It therefore ordered the FPO previously issued by the initial trial court judge to remain in effect.

---

[5]  The first trial judge explicitly stated that "plaintiff is tasked in this case with proving both elements of SASPA," N.J.S.A.2C:14-16(a)(1) and (2), "by a preponderance of the evidence," and made factual findings as to each.  The remand judge likewise explicitly held that a survivor must prove "by a preponderance of the evidence . . . that there is the possibility of future risk to [her] safety or well-being," and that this "prong" was satisfied.

## C.

Martin appealed, arguing that Clara satisfied neither N.J.S.A. 2C:14-16(a)(1) or (2) because the sexual activity was consensual, he posed no threat to Clara, and her fear of him was "irrational."

In an unpublished opinion, the Appellate Division affirmed the trial court, concluding that "plaintiff satisfied her burden of demonstrating a predicate act as defined under the first prong of SASPA[] and [that] there exists a possibility of future risk to her safety or well-being as required by the Act's second prong." On the first factor, the appellate court noted the substantial deference owed to the Family Part's findings of fact "[b]ecause of its special expertise in family matters," and held that the court's conclusion on the lack of consent was "supported by adequate, substantial, credible evidence." (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Turning to the second factor, the court focused on the plain and ordinary meaning of the terms in N.J.S.A. 2C:14-16(a)(2). Because the statute does not define the words used in (a)(2), the Appellate Division relied on Merriam-Webster's Dictionary, observing that risk is defined as "possibility of loss or injury"; safety as "the condition of being safe from . . . hurt, injury, or loss"; and well-being as "the state of being happy, healthy, or prosperous." The appellate court concluded that in light of those definitions, and "in view of the

trial judge's credibility and factual findings, we are satisfied plaintiff demonstrated the possibility of the future risk of harm to her well-being or safety."

We granted Martin's petition for certification limited to the interpretation of N.J.S.A. 2C:14-16(a)(2). 254 N.J. 183 (2023). We also granted leave to Legal Services of New Jersey (LSNJ) and Partners for Women and Justice (Partners) to participate as amici curiae.

## II.

Martin submits that the trial court's interpretation of N.J.S.A. 2C:14-16(a)(2) on remand, which the Appellate Division affirmed, sets the bar too low because "unless one or the other party is dead, there is always a possibility, however miniscule, of future risk." That runs afoul of our holding in C.R. I, Martin maintains, because it means that "prong two would be met in every single SASPA case." Moreover, according to Martin, "[a]n irrational fear does not warrant a restraining order," and "merely wanting a restraining order for 'peace of mind'" does not "meet the requirements of prong two." Because there was "absolutely no evidence placed on the record" that he posed "any threat" to Clara or anyone else, and because the parties have had no contact since the incident, Martin urges, "the Appellate Division erred as a matter of law in . . . render[ing] prong two meaningless."

10

Clara counters that the courts below correctly construed the statute's "plain, unambiguous language." According to Clara, N.J.S.A. 2C:14-16(a)(2)'s "requirement" that "alleged victims . . . show the possibility of future risk to their 'safety <u>or</u> well-being'" in order to obtain an FPO "is satisfied by exactly the type of serious psychological trauma" that the trial court found she "compellingly demonstrated in this case." Martin, Clara argues, asks the Court to ignore the plain language of N.J.S.A. 2C:14-16(a)(2) and "apply the much more stringent test [for a Final Restraining Order (FRO)] under [the] Prevention of Domestic Violence Act [PDVA], N.J.S.A. 2C:25-17 to -35." Yet when the Legislature enacted SASPA in 2015, Clara maintains, it intentionally chose not to incorporate the more rigorous requirements of the PDVA, and it is "not a court's 'function to re-write a plainly written enactment.'" (quoting <u>J.H. v. R&M Tagliareni, LLC</u>, 239 N.J. 198, 214 (2019)). Clara also submits that SASPA's "broad and compelling remedial purposes" are fully consistent with interpreting N.J.S.A. 2C:14-16(a)(2) to be satisfied by "future risk to the psychological well-being of sexual assault survivors."

Amicus Partners for Women and Justice asserts that while "the Court may be concerned that in some cases a liberal standard will make the issuance of [a SASPA FPO] perfunctory, it is what the Legislature intended." Partners

urges us to apply the "perfunctory and self-evident" standard established for PDVA FROs by the Appellate Division in <u>A.M.C. v. P.B.</u>, 447 N.J. Super. 402, 417 (App. Div. 2016), to SASPA FPOs as well, and thus hold that SASPA's second factor is automatically satisfied whenever the predicate act is "nonconsensual sexual penetration (<u>i.e.</u>, rape) or other egregious acts of sexual violence." Partners also emphasizes that a SASPA FPO carries consequences for a respondent that are less significant than a PDVA FRO.

Amicus LSNJ submits that the Legislature "molded SASPA to the contours of the PDVA" in certain ways, and the "hand-in-glove connections between the two statutes makes for a sharp contrast where the Legislature incorporated dissimilar language and standards into SASPA." Focusing on one such distinction, LSNJ contrasts a PDVA FRO, which requires that relief be "necessary to prevent further abuse," with SASPA's consideration of "the possibility of future risk to the safety or well-being of the alleged victim." LSNJ argues this "must be viewed as [a] deliberate choice[] by the Legislature that represent[s] the intent to achieve distinct standards." LSNJ also encourages us to establish a list of factors that courts should consider in determining whether N.J.S.A. 2C:14-16(a)(2) is satisfied.

III.

A.

We defer to a trial court's factual findings "when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (1998). "That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, 154 N.J. at 412). We will therefore leave a trial court's factual findings undisturbed "unless they 'went so wide of the mark that a mistake must have been made.'" Ibid. (quoting DYFS v. M.M., 189 N.J. 261, 279 (2007)).

We review questions of statutory interpretation de novo, owing no deference to the legal conclusions of the trial court or the Appellate Division. State v. Fuqua, 234 N.J. 583, 591 (2018).

In cases of statutory interpretation, we start with "the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citation omitted). "[W]hen the language of a statute is clear on its face," our "sole function . . . is to enforce it according to its terms." Cashin v. Bello, 223 N.J. 328, 335 (2015) (alteration in original) (quoting

Hubbard v. Reed, 168 N.J. 387, 392 (2001)). We "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

In construing a statute's plain language, we "strive[] for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant.'" In re DiGuglielmo, 252 N.J. 350, 360 (2022) (second alteration in original) (quoting Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020)). Moreover, "[w]hen 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'" Higgins v. Pascack Valley Hosp., 158 N.J. 404, 419 (1999) (quoting GE Solid State, Inc. v. Dir., Div. of Tax'n, 132 N.J. 298, 307-08 (1993)).

B.

As we detailed in C.R. I, SASPA, which was enacted in 2015, allows survivors of sexual assault who cannot seek restraining orders under the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, to seek temporary and permanent civil protective orders. 248 N.J. at 441. Specifically, "[a]ny person alleging to be a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such

14

conduct," who is not eligible for a restraining order as a "victim of domestic violence" under the PDVA, may apply for a protective order under SASPA. N.J.S.A. 2C:14-14(a)(1), -16.

The PDVA defines "victim of domestic violence" as a person "who has been subjected to domestic violence" by a spouse, former spouse, household member, a person with whom the victim has or will have a child, or a person with whom the victim had a dating relationship. N.J.S.A. 2C:25-19(d). A person who is "subjected to sexual violence in a random encounter" or by someone with whom they have "less than a dating relationship" therefore cannot seek a restraining order under the PDVA -- "SASPA was intended to fill this void." R.L.U. v. J.P., 457 N.J. Super. 129, 135 (App. Div. 2018).

The standard for granting a SASPA protective order differs depending on whether the applicant seeks a temporary or final order.

TPOs may be granted on an emergency and ex parte basis "when necessary to protect the safety and well-being of an alleged victim on whose behalf the relief is sought." N.J.S.A. 2C:14-15(a). In addition, a court "shall" grant a TPO if it "determines that the applicant is a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, and qualifies for such relief" under N.J.S.A. 2C:14-14. See N.J.S.A. 2C:14-15(b). A TPO, which "shall be granted upon good cause shown," id. at

15

(d), may include "any relief necessary to protect the safety and well-being of an alleged victim," id. at (a). Examples of possible forms of relief include an order prohibiting the respondent from having any contact with the victim or the victim's family members, and an order prohibiting the respondent from entering the victim's home, school, or work. Id. at (e)(1) to (6).

The standard for granting an FPO, by contrast, is a preponderance of the evidence. Importantly, an FPO does not require a showing that it is "necessary to protect the safety and well-being" of the victim; it requires only the "possibility of future risk to the safety or well-being of the alleged victim." The statute sets forth the procedure and requirements for obtaining an FPO in N.J.S.A. 2C:14-16(a):

> A hearing [for an FPO] shall be held in the Superior Court within 10 days of the filing of an application [for a TPO] . . . . At the hearing, the standard for proving the allegations made in the application for a protective order shall be a preponderance of the evidence. The court shall consider but not be limited to the following factors:
>
> (1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim; and
>
> (2) the possibility of future risk to the safety or well-being of the alleged victim.
>
> [N.J.S.A. 2C:14-16(a) (emphasis added).]

16

Although the statute defines the terms "sexual contact," "sexual penetration," and "lewdness" used in factor one, see N.J.S.A. 2C:14-14(a)(1), it does not define any of the words included in factor two.

The remainder of N.J.S.A. 2C:14-16 sets forth additional instructions for FPOs. For example, a court may not deny an FPO due to the "alleged victim's failure to report the incident to law enforcement; the alleged victim's or the respondent's alleged intoxication; whether the alleged victim did or did not leave the premises to avoid [the] nonconsensual sexual contact . . . ; or the absence of signs of physical injury to the alleged victim." N.J.S.A. 2C:14-16(b). And "evidence of the alleged victim's previous sexual conduct or manner of dress at the time of the incident shall not be admitted" in any FPO proceeding. N.J.S.A. 2C:14-16(c).

N.J.S.A. 2C:14-16(e) then sets forth a necessary precondition for the issuance of an FPO and what such an order must prohibit.

> A final protective order issued pursuant to this section shall be issued only after a finding or an admission is made that the respondent committed an act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim. A final protective order shall:
>
> (1)  prohibit the respondent from having contact with the victim; and
>
> (2)  prohibit the respondent from committing any future act of nonconsensual sexual contact, sexual

17

> penetration, or lewdness, or any attempt at such conduct, against the victim.
>
> [N.J.S.A. 2C:14-16(e).]

N.J.S.A. 2C:14-16(f) lists additional relief, identical to restrictions that can be imposed on a respondent as part of a TPO under N.J.S.A. 2C:14-15(e)(2) to (6), that an FPO may include.

Finally, pursuant to N.J.S.A. 2C:14-16(i), either party can file a petition with the court "to dissolve or modify a final protective order." In adjudicating the petition, the court must "consider whether a material change in circumstances has occurred" that would render the continuance of the FPO "inequitable, oppressive or unjust taking into account . . . the desire of the victim for the continuation of the protective order, the potential for contact between the parties, the history of the respondent's violations of the protective order or criminal convictions, and any other factors that the court may find relevant." Ibid.

## C.

As earlier noted, SASPA explicitly allows orders of protection only for those who are "not eligible for a restraining order as a 'victim of domestic violence'" under the PDVA. N.J.S.A. 2C:14-14(a)(1). As a complement to the PDVA, SASPA mirrors the PDVA in certain respects, and diverges from it in others. Both bear mention here.

18

Like SASPA, the PDVA allows survivors to "seek emergency, ex parte relief." N.J.S.A. 2C:25-28(f). Under SASPA, that relief is a TPO; under the PDVA, it is a temporary restraining order (TRO). See N.J.S.A. 2C:14-15(a); 2C:25-28(f). The permissive standards for a SASPA TPO and a PDVA TRO are nearly identical: a judge may issue a PDVA TRO "when necessary to protect the life, health or well-being of a victim," N.J.S.A. 2C:25-28(f), whereas a SASPA TPO may be issued "when necessary to protect the safety and well-being of an alleged victim," N.J.S.A. 2C:14-15(a).

The procedures for seeking a PDVA final restraining order (FRO) and a SASPA FPO are also the same. Both require that a hearing be held within ten days of the filing of the application for a TRO or TPO. See N.J.S.A. 2C:25-29(a); N.J.S.A. 2C:14-16(a). Both provide that at the hearing, the standard for proving the allegations in the complaint or application shall be a preponderance of the evidence. See ibid. And both provide that "[t]he court shall consider but not be limited to the following factors." Ibid. (emphasis added).

However, SASPA then lists only two factors that the court shall consider: "(1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness . . . ; and (2) the possibility of future

risk to the safety or well-being of the alleged victim." N.J.S.A. 2C:14-16(a) (emphasis added). The PDVA, in contrast, lists six:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a) (emphasis added).]

Four of the six PDVA factors could not have applied to SASPA because a SASPA FPO is available only to a person who did not have a close prior relationship with the alleged perpetrator. However, the second factor for a PDVA FRO does not speak to a prior relationship between the parties, and the Legislature therefore could have duplicated it in SASPA. It did not. Instead, the Legislature prescribed SASPA's second factor, instructing a court to consider "the possibility of future risk to the safety or well-being of the alleged

victim," N.J.S.A. 2C:14-16(a)(2), rather than "[t]he existence of immediate danger to person or property," N.J.S.A. 2C:25-29(a)(2).

In addition, the consequences to a defendant of a PDVA FRO are drastically different from the consequences to a respondent of a SASPA FPO. Recall that a SASPA FPO must only "(1) prohibit the respondent from having contact with the victim; and (2) prohibit the respondent from committing any future act of nonconsensual sexual contact, sexual penetration, or lewdness . . . against the victim." N.J.S.A. 2C:14-16(e). And it may include additional relief barring the respondent from entering the victim's home, school, or work. See id. at (f)(1) to (5).

Penalties in a PDVA FRO, on the other hand, can be far more severe. A defendant must "immediate[ly] surrender . . . any firearm," and an FRO must prohibit the defendant from purchasing, owning, or possessing any weapons. N.J.S.A. 2C:25-29(b). An FRO can then include nineteen additional forms of relief, including an order: granting exclusive possession to a plaintiff of a home the plaintiff and defendant had shared, while requiring the defendant to continue making payments on the home; directing the defendant to pay money damages to the plaintiff, including the cost of counseling, moving expenses, attorney's fees, damages for pain and suffering, and punitive damages; granting the plaintiff "temporary possession of specified personal property,"

21

such as a car; "awarding temporary custody of a minor child" to the plaintiff; requiring the defendant "to receive professional domestic violence counseling"; and requiring the defendant "to undergo a psychiatric evaluation." Id. at (b)(1) to (19).

IV.

SASPA's plain language and context lead us to conclude that Clara's testimony on remand was sufficient for the trial court to find the statute satisfied, and order the FPO to remain in effect. We therefore affirm the judgment of the Appellate Division.

A.

On its face, the text of N.J.S.A. 2C:14-16(a)(2), requiring a court to consider "the possibility of future risk to the safety or well-being of the alleged victim," creates a permissive standard that is easily satisfied.

Because SASPA does not define the words "possibility," "risk," "safety," or "well-being," we afford the terms their "generally accepted meaning, according to the approved usage of the language." See N.J.S.A. 1:1-1. Like the Appellate Division, we turn to dictionary definitions for guidance.

The New Oxford American Dictionary defines "possibility" as "a thing that may happen or be the case." New Oxford American Dictionary 1365 (3d ed. 2010). The word "possibility" therefore does not require that something

22

will definitely happen, will probably happen, or even will likely happen; it simply requires a chance that something "may happen or be the case." "Risk" is defined as "a situation involving exposure to danger" or "the possibility that something unpleasant or unwelcome will happen." Id. at 1507. "Safety" is "the condition of being protected from or unlikely to cause danger, risk, or injury." Id. at 1537. And "well-being" is a "state of being comfortable, healthy, or happy." Id. at 1961.

The plain language of factor two thus requires a court to consider whether there is a chance that a survivor may be exposed to physical danger, risk, or injury, or may be exposed to something emotionally unwelcome or unpleasant that could make them feel uncomfortable, unhealthy, or unhappy. And because the language of factor two is centered on the safety or well-being of the victim-survivor, a survivor's own testimony regarding possible future risks to their safety or emotional well-being can suffice.

Our reading of the plain text of factor two as creating a lenient and easy-to-satisfy standard is reinforced by context -- the ways in which the Legislature intentionally distinguished a SASPA FPO from both a SASPA TPO and a PDVA FRO.

As earlier noted, a SASPA TPO may be granted "<u>when necessary to protect</u> the safety and well-being of an alleged victim on whose behalf the

23

relief is sought," N.J.S.A. 2C:14-15(a) (emphasis added). The Legislature could have used the same language for a SASPA FPO as well, requiring that it be "<u>necessary to protect</u>" a victim. It did not. Instead, an FPO requires consideration only of the "<u>possibility of future risk to</u> the safety or well-being of the alleged victim." N.J.S.A. 2C:14-16(a)(2) (emphasis added). A "possibility of future risk" is less demanding than "necessary" protection. We must respect that legislative choice. See State v. Ferguson, 238 N.J. 78, 102 (2019) ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible." (quoting In re Expungement Petition of J.S., 223 N.J. 54, 74 n.5 (2015))).

Similarly, in crafting SASPA, the Legislature intentionally copied much of the language of the PDVA, including the opening sentences of N.J.S.A. 2C:14-16(a). See supra at ___ (slip op. at 18-19); N.J.S.A. 2C:25-29(a). But the PDVA's second factor requires courts to consider "the existence of immediate danger to person or property," N.J.S.A. 2C:25-29(a)(2), whereas SASPA's second factor requires consideration only of "the possibility of future risk to the safety or well-being" of the victim, N.J.S.A. 2C:14-16(a).

While a "possibility" is something that may occur in the future, in order to "exist[]," something must be presently occurring. And a "future risk" to a person's "safety or well-being," is of course far less demanding than an

24

"immediate danger" to that person.  Rather than importing the PDVA's second factor, the Legislature thus used far broader language in SASPA.  Especially because the statutes are identical in so many other respects, those differences must be treated as deliberate.  See State v. Ryan, 249 N.J. 581, 599 (2022) ("It is the Legislature's prerogative to impose a requirement in one context but not another; it is our duty to treat that distinction as meaningful.").

We must respect the Legislature's decision to create a standard for a SASPA FPO that is broad and permissive, both on its face and as compared with a SASPA TPO and a PDVA FRO.

## B.

Applying this analysis, we defer to the trial court's factual findings because they are supported by substantial evidence, and we find no error in the court's legal conclusion.

Clara testified that she is "affected by what happened every day."  She explained that she has seen multiple therapists, cannot sleep, has a hard time making friends or trusting people, and has "terrible intimacy issues."  She told the court that she feared for her safety, felt terrified each time she was unsure of her surroundings, and had a hard time going shopping on her own.  She detailed how she had lost her "sense of self-worth," and how the sexual assault had "destroyed [her,] honestly."

25

The remand judge found her testimony "credible and believable." The judge concluded that there was a "possibility of future risk" to Clara's "safety or well-being" if the FPO put in place by the original trial judge were to be dissolved or modified. He therefore ordered the FPO to remain in effect.

We are not persuaded by Martin's claims of error. Martin first argues that requiring only a "possibility of future risk" to a victim's safety or well-being runs afoul of our analysis in C.R. I, because "unless one or the other party is dead, there is always a possibility, however miniscule, of future risk" and factor two would thus be met "in every single SASPA case."

Martin misconstrues our statement in C.R. I that "[i]t cannot be that simply filing for a protective order is sufficient to create 'the possibility of future risk to the safety or well-being of the alleged victim,'" or "prong two would be met in every single SASPA case." 248 N.J. at 448. That means only that the procedural step of requesting an FPO cannot, in and of itself, satisfy one of the two substantive factors that are considered to obtain an FPO. It does not mean that negative consequences of sexual assault, such as trauma, anxiety, or fear, can be ignored simply because they may exist in many SASPA cases.

"Our courts have recognized that, in sexual assault cases, 'the wellbeing of . . . victims demands heightened protection' because there is a 'likelihood of

26

emotional trauma and mental distress.'" State v. Chambers, 252 N.J. 561, 584 (2023) (omission in original) (quoting State v. D.R.H., 127 N.J. 249, 259 (1992)). C.R. I does not require courts to ignore the precise forms of trauma that victims of sexual assault are most likely to experience when analyzing N.J.S.A. 2C:14-16(a)(2). On the contrary, the plain language of the provision makes clear that credible testimony about such emotional and psychological harm can be sufficient to satisfy SASPA's second factor.

Martin also contends that "[a]n irrational fear does not warrant a restraining order," and that Clara's fears are unreasonable because he has not attempted to contact her in the three years since the incident. But nothing in the plain language of N.J.S.A. 2C:14-16(a)(2) requires a survivor's belief about the possibility of future risk to their safety or well-being to be objectively reasonable.

The Legislature is familiar with a reasonable person standard, and has chosen to employ it in many other statutes.[6] Not so here. The word

---

[6] See, e.g., N.J.S.A. 2C:12-10(b) ("A person is guilty of stalking . . . if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety . . . ."); N.J.S.A. 2C:21-25(a) ("A person is guilty of a crime if the person . . . transports or possesses property known or which a reasonable person would believe to be derived from criminal activity. . . ."); N.J.S.A. 2C:14-9(a) ("An actor commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, and under circumstances in which a reasonable person

27

"reasonable" does not appear in SASPA, and we "decline [respondent's] invitation to read into [the law] a requirement that a [survivor's] fear of encountering the [respondent] must be objectively reasonable under the circumstances." K.N.B. v. M.D., 259 A.3d 341, 351 (Pa. 2021). As the Pennsylvania Supreme Court held regarding Pennsylvania's Protection of Victims of Sexual Violence or Intimidation Act, "there is simply no textual support for the conclusion that a . . . plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard." Ibid.

## C.

The concurring opinion disagrees with this reading of the statute, and would hold that "[o]nce a victim proves by a preponderance of the evidence that a respondent committed a predicate act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct . . . the victim is automatically entitled to an FPO" under N.J.S.A. 2C:14-16(e). Post at ___ (slip op. at 2) (internal quotation marks omitted). According to the concurrence, "the possibility of future risk to the safety or well-being of the alleged victim" under N.J.S.A. 2C:14-16(a)(2) is not relevant to whether a

---

would know that another may expose intimate parts or may engage in sexual penetration or sexual conduct, he observes another person without that person's consent and under circumstances in which a reasonable person would not expect to be observed.").

28

survivor can obtain an FPO under -16(a); it is only "one factor to consider when fashioning additional relief in the FPO under N.J.S.A. 2C:14-16(f)." Post at ___ (slip op. at 2).

No party or amicus has so argued before this Court, the trial court, or the Appellate Division. Perhaps that is because the argument contravenes the plain language of N.J.S.A. 2C:14-16(a), (e), and (f).

Had the Legislature wanted to prescribe that an FPO must automatically issue anytime a judge finds, or a respondent admits to, a predicate act, it could have said so in N.J.S.A. 2C:14-16(a). It also could have deleted large portions of N.J.S.A. 2C:14-16(a), moved N.J.S.A. 2C:14-16(e) up to the first provision, and written it as: "A final protective order shall be issued after a finding or an admission is made that the respondent committed an act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim."

It did not. The words "a final protective order issued pursuant to this section," rather than "pursuant to this subsection," in N.J.S.A. 2C:14-16(e), most naturally refer back to N.J.S.A. 2C:14-16(a), which sets forth, in detail, the who, what, when, where, why, and how of an FPO. And the words "shall be issued only after a finding or admission is made" in N.J.S.A. 2C:14-16(e)

29

indicate that while the finding or admission of a predicate act is a necessary condition to the issuance of an FPO, it is not itself sufficient.

Similarly, had the Legislature wanted to mandate that a trial court consider "the possibility of future risk to the safety or well-being of the alleged victim," N.J.S.A. 2C:14-16(a)(2), only "when fashioning additional relief in the FPO under N.J.S.A. 2C:14-16(f)," post at ___ (slip op. at 2), it could have done so.

Again, it did not. Simply put, there is no textual connection between satisfying N.J.S.A. 2C:14-16(a)(2) and the imposition of additional relief under N.J.S.A. 2C:14-16(f). N.J.S.A. 2C:14-16(a)(2) does not mention subsection (f) and says nothing about additional forms of relief that an FPO can include. Likewise, subsection (f) does not reference N.J.S.A. 2C:14-16(a)(2) or mention "the possibility of future risk to the safety or well-being of the alleged victim." And subsection (f) explicitly allows for all its listed forms of relief to be applied in any FPO, not merely where a court finds "the possibility of future risk to the safety or well-being of the alleged victim." N.J.S.A. 2C:14-16(a)(2), (f).

The concurrence asserts that its interpretation is compelled by "[a] full reading of SASPA's text." Post at ___ (slip op. at 12). But the concurrence actually gives short shrift to the words in N.J.S.A. 2C:14-16(a) to (d), reads the

30

word "only" out of subsection (e), and reads the words "the possibility of future risk to the safety or well-being of the alleged victim" into subsection (f). We decline to adopt that approach.

We also decline LSNJ's invitation to adopt a list of factors for courts to consider in determining whether a survivor has shown "the possibility of future risk to the[ir] safety or well-being" under N.J.S.A. 2C:14-16(a)(2). Had the Legislature wanted to import into SASPA the six factors listed in the PDVA, N.J.S.A. 2C:25-29(a)(1) to (6), it could have done so. Similarly, although the Legislature set forth four factors for a court to consider in determining whether a SASPA FPO should be dissolved or modified under N.J.S.A. 2C:14-16(i), including "the potential for contact between the parties" and "the history of the respondent's violations of the protective order or criminal convictions," it did not include any of those factors in the list of what a court "shall" consider in deciding whether to issue an FPO to begin with, N.J.S.A. 2C:14-16(a). We therefore do not add those factors, or any others the Legislature did not include, to N.J.S.A. 2C:14-16(a)(2). See, e.g., DiProspero, 183 N.J. at 492 ("We cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment . . . .'" (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952))).

31

We likewise do not reach Partners' request, echoed by LSNJ, to apply the "perfunctory and self-evident" standard established for PDVA FROs by the Appellate Division in A.M.C. v. P.B., 447 N.J. Super. at 417, to SASPA FPOs, and to therefore hold that SASPA's second factor is automatically satisfied whenever the predicate act is "nonconsensual sexual penetration (i.e., rape) or other egregious acts of sexual violence." Clara did not include such a request in her briefing to this Court or any court. "[A]s a general rule, the Court 'does not consider arguments that have not been asserted by a party, and are raised for the first time by an amicus curiae.'" State in Int. of A.A., 240 N.J. 341, 359 n.1 (2020) (quoting State v. J.R., 227 N.J. 393, 421 (2017)). And the issue raised by Partners is not necessary to decide this case, as Clara clearly put forth sufficient evidence to show a "possibility of future risk" to her "safety or well-being" under N.J.S.A. 2C:14-16(a)(2).

We make one final comment. Because three years elapsed between the issuance of the initial FPO and the second FPO hearing, Clara was able to provide testimony during the remand hearing about mental health treatment she had been receiving and how the sexual assault was still impacting her life several years later. The concurrence expresses concern that the unique procedural posture of this case, in which Clara was able to testify with "the benefit of hindsight," "illustrates how N.J.S.A. 2C:14-16(a)(2)'s standard will

32

not always be 'easily satisfied.'" Post at ___ (slip op. at 27). We disagree. Our discussion of Clara's testimony, see supra at ___ (slip op. at 6-7, 25), is not intended to imply that such evidence of psychological symptoms or treatment is necessary to satisfy N.J.S.A. 2C:14-16(a)(2). Indeed, because an FPO hearing is generally required to take place within ten days of the filing of an application for a SASPA TPO, see N.J.S.A. 2C:14-16(a)(2), a survivor will likely not yet have received any mental health treatment. Expert testimony or documentation of psychological treatment is therefore not required. Neither, of course, is evidence of symptoms over a period of years.

## V.

We have every confidence that trial judges will ably consider "the possibility of future risk to the safety or well-being of the alleged victim" in accordance with the plain language of N.J.S.A. 2C:14-16(a)(2) and the guidance provided in this opinion.

For the foregoing reasons, the judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and NORIEGA join in JUSTICE WAINER APTER's opinion. JUSTICE FASCIALE filed a concurrence.

33

C.R.,

Plaintiff-Respondent,

v.

M.T.,

Defendant-Appellant.

JUSTICE FASCIALE, concurring.

I disagree with the notion that to obtain a final protective order (FPO) under the Sexual Assault Survivor Protection Act of 2015 (SASPA), N.J.S.A. 2C:14-13 to -21 (2023) -- now known as the Victim's Assistance and Survivor Protection Act (VASPA) -- a victim must speculate about whether there exists a "possibility of future risk to [their] safety or well-being."[1]  The plain language

---

[1]  Like the majority, I use SASPA throughout this opinion instead of VASPA. In July 2023, Governor Philip D. Murphy signed legislation amending SASPA to broaden its protective scope for victims of alleged sexual contact and other predicate acts.  See Office of the Governor, Press Release:  Governor Murphy Signs Legislation Expanding Access to Temporary Protective Orders (July 24, 2023), https://www.nj.gov/governor/news/news/562023/approved/20230724c.s html.  The amendment became effective January 1, 2024.  Just like SASPA, VASPA "[a]uthorizes issuance of protective orders for certain victimized persons in situations for which domestic violence statutes do not apply due to lack of familial or dating relationship between victim and offending actor."  S. 1517 Synopsis (Second Reprint, Feb. 10, 2022).  It also adds two predicate acts -- stalking and cyber-harassment -- and expressly defines "emotional

of SASPA requires no such conjecture.  Once a victim proves by a preponderance of the evidence that a respondent committed a predicate act of "nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct," N.J.S.A. 2C:14-16(a)(1), the victim is <u>automatically</u> entitled to an FPO prohibiting the respondent from contacting the victim and committing further predicate acts, <u>see</u> N.J.S.A. 2C:14-16(e).  The "possibility" of what may or may not happen in the future -- even if "permissive and easily satisfied," <u>ante</u> at ___ (slip op. at 3) -- is simply one factor to consider when fashioning additional relief in the FPO under N.J.S.A. 2C:14-16(f).  It is not an element of proof that a victim must establish to obtain an FPO.

This is a unique case because the victim here testified at two FPO hearings that were over three years apart and before different FPO judges.  Two FPO hearings occurred because there was a remand.  <u>See</u> <u>C.R. v. M.T.</u>

---

distress" in the context of "stalking."  <u>L.</u> 2023, <u>c.</u> 127, § 2 (codified at N.J.S.A. 2C:14-14).  Pertinent to this case, VASPA did not change the burden of proof a victim must surmount to obtain final protection but indeed expanded protections for victims who could not get relief previously under the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35.  Given that VASPA did not change any provision relevant to the issuance of an FPO, my interpretation of SASPA applies in full force to VASPA.  And because the VASPA amendments are not at issue in this case, as the majority stated, this opinion too relies on the text of N.J.S.A. 2C:14-13 to -21 in effect prior to January 1, 2024.  All citations to N.J.S.A. 2C:14-13 to -21 are to the pre-amendment language as of December 31, 2023.

(C.R. I), 248 N.J. 428 (2021). At the first FPO hearing in 2018, approximately one month after the occurrence of the predicate act, the initial FPO judge found that there existed "the possibility of future risk to the safety or well-being of the alleged victim," id. at 436, despite citing no evidence. The judge instead relied only on the filing for a protective order to make that finding. Ibid. That is why the Court in C.R. I stated that "[i]t cannot be that simply filing for a protective order is sufficient to create 'the possibility of future risk to the safety or well-being of the alleged victim' noted in [factor] two." Id. at 448 (quoting N.J.S.A. 2C:14-16(a)(2)).[2]

Instead of concluding that there existed sufficient evidence in the record to support a finding that there is a "possibility of future risk to the safety or well-being of the alleged victim," the Court in C.R. I correctly determined that the "factual findings that the [initial FPO judge] put on the record appear to counter plaintiff's establishing" that there is a "possibility of future risk to the safety or well-being of the alleged victim." Ibid. (emphasis added). The Court therefore remanded "so that the trial court may . . . make additional findings of

_____

[2] I agree with the majority that SASPA's plain text supports the conclusion that N.J.S.A. 2C:14-16(a)(1) and (2) are "factors" and not "prongs," contrary to the parties' contentions. Ante at ___ (slip op. at 4 n.4). But I disagree that the second factor -- N.J.S.A. 2C:14-16(a)(2) -- needs to be proven by a victim as an element before the issuance of the FPO. Consideration of factor two is not an element of proof to obtain the FPO; instead, it is relevant to fashioning additional protection under N.J.S.A. 2C:14-16(f).

3

fact [on factor two] that support a determination either that the [factor] has been satisfied, or not, in deciding whether to issue the final [protective] order." Ibid. (emphasis added).  Although the majority here determined that "the plain language of N.J.S.A. 2C:14-16(a)(2) creates a standard that is permissive and easily satisfied," ante at ___ (slip op. at 3), the first FPO judge's inability to point to such evidence belies that determination and prompted, in part, C.R. I's remand instructions.

On remand, a different judge, over three years later, heard additional testimony from the victim, who instead of speculating about the "possibility of future risk to [her] safety or well-being," testified specifically about how the predicate act, which occurred over three years prior, impacted her.  After hearing this new testimony, the second judge decided to keep the original FPO in effect, which included additional protections under N.J.S.A. 2C:14-16(f).

That procedure is highly uncommon.  As I will later explain, this irregularity underscores two critical points:  (1) victims will likely struggle to produce evidence shortly after a predicate act occurs that demonstrates there exists a "possibility of future risk to the safety or well-being of the alleged victim," and (2) final protection under SASPA is not dependent on speculation that there exists a "possibility of future risk to the safety or well-being of the alleged victim."

4

I would thus hold that the victim here is entitled to the FPO solely because she proved at the <u>first</u> FPO hearing the occurrence of a predicate act under N.J.S.A. 2C:14-16(a)(1). No other proof was required for her to obtain the minimum protection available under SASPA and mandated by N.J.S.A. 2C:14-16(e). Furthermore, it is equally clear to me that the victim -- who amplified her testimony three-plus years later at a remand hearing -- is entitled to additional relief under N.J.S.A. 2C:14-16(f), not based on the initial FPO record, but rather, on the subsequent findings made by the remand judge that she suffered a "possibility of future risk to [her] safety or well-being" under N.J.S.A. 2C:14-16(a)(2).[3]

I therefore write separately.

---

[3] This Court reviews the interpretation of statutes de novo. <u>Ante</u> at ___ (slip op. at 13) (quoting <u>State v. Fuqua</u>, 234 N.J. 583, 591 (2018)). In doing so, the Court's role is to discern and effectuate the Legislature's intent which first involves analyzing the plain text of the statute, and then resorting to extrinsic sources if the text is ambiguous. <u>State v. S.B.</u>, 230 N.J. 62, 67-68 (2017); <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005); <u>see also</u> <u>Young v. Schreing Corp.</u>, 141 N.J. 16, 25 (1995) ("In the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent." (quoting <u>Roig v. Kelsey</u>, 135 N.J. 500, 515 (1994))). Notably, Partners for Women and Justice argue in its merits brief that based on a plain reading of SASPA, N.J.S.A. 2C:14-16(a)(2) is not a required element of proof for the issuance of an FPO.

5

In 2015, Governor Christopher J. Christie signed SASPA into law effective May 7, 2016. Unlike the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, which protects victims of domestic violence, SASPA protects "[a]ny person alleging to be a <u>victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct</u>, and <u>who is not eligible for a restraining order as a 'victim of domestic violence</u>' as defined by the" PDVA. N.J.S.A. 2C:14-14(a)(1) (emphases added).[4] SASPA allows those who are not protected under the PDVA to "file an application with the Superior Court . . . alleging the commission of such conduct or attempted conduct and seeking a temporary protective order [(TPO)]." <u>Ibid.</u>

II.

Preliminarily, I briefly discuss the PDVA and SASPA given the natural tendency to compare the elements of proof for the issuance of a PDVA final

---

[4] The PDVA defines a "[v]ictim of domestic violence" as "any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse," household member, someone with whom "the victim has had a dating relationship," or "any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common" or plans to have a child and "one of the parties is pregnant." N.J.S.A. 2C:25-19(d).

restraining order (FRO) with that of an FPO under SASPA. As the majority correctly points out, "SASPA mirrors the PDVA in certain respects, and diverges from it in others." Ante at ___ (slip op. at 18). FROs under the PDVA and FPOs under SASPA (1) protect victims against prescribed predicate acts; (2) require alleged victims to establish by a preponderance of the evidence the occurrence of one or more predicate acts; and (3) require the FRO or FPO judge to "consider" certain "factors." However, other than those general similarities, the PDVA and SASPA are incomparable.

Under the PDVA, and unlike SASPA, the Legislature "did not intend that the commission of one of the enumerated predicate acts of domestic violence [would] automatically mandate[] the entry of a domestic violence restraining order." Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006) (emphases added). The text of SASPA is different. It states that an "[FPO] issued pursuant to this section shall be issued only after a finding or an admission is made that the respondent committed" a predicate act. N.J.S.A. 2C:14-16(e) (emphasis added).

Importantly, an FRO under the PDVA is aimed at providing prospective relief against predicted future acts of harm; it is geared towards ending the cycle of domestic violence. See N.J.S.A. 2C:25-18 (explaining that, when it enacted the PDVA, the Legislature intended "to assure the victims of domestic

7

violence the maximum protection from abuse the law can provide"). That is precisely why, in the context of the PDVA, FRO judges must determine whether an FRO is "<u>necessary</u> to prevent <u>further</u> abuse." See N.J.S.A. 2C:25-29(b) (emphases added). Thus, to obtain an FRO under the PDVA, a victim must not only prove that a predicate act occurred but also that an FRO is "necessary . . . to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

In contrast, a SASPA victim need not prove a "second prong" or "factor" as a prerequisite to obtaining an FPO. Under SASPA, contrary to the majority's view, the issuance of an FPO does not require a victim to <u>also</u> demonstrate, beyond proving the commission of a predicate act, that without an FPO there exists a "possibility of future risk to the [victim's] safety or well-being." Ante at ___ (slip op. at 3, 22). And SASPA definitely does not require a victim to show that the FPO is "necessary . . . to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Rather, SASPA provides that an alleged victim is automatically entitled to an FPO after establishing only that a respondent committed one or more predicate acts. See N.J.S.A. 2C:14-16(e). Therefore, the elements of proof, the analytical framework, and the overall structure of SASPA and the PDVA differ, and cannot be conflated.

8

## A.

Notably, an FPO under SASPA is accomplished in two different sequential stages: first is the initial TPO stage which has a "good cause" burden of proof, and then second is the FPO stage which has a heavier burden of proof "by a preponderance of the evidence." Although our focus here is on the proofs necessary at the second stage (obtaining an FPO), I dissect each stage not only to inform litigants and superior court judges about the significant differences, but also to emphasize that consideration of the "possibility of future risk to the safety or well-being of the alleged victim," N.J.S.A. 2C:14-16(a)(2), is to be considered to fashion additional relief in the FPO, not as a required element of proof for an FPO.

## 1.

At the first stage, an alleged victim of a predicate act under SASPA must apply for an emergency ex parte TPO. N.J.S.A. 2C:14-15. N.J.S.A. 2C:14-15(d) provides that a TPO "shall be granted upon good cause shown and shall remain in effect until a judge of the Superior Court issues a further order." (emphasis added). At this TPO stage, unlike at the FPO stage, the immediate focus is the emergent nature prompted by the alleged predicate act and the need to protect the victim pending a final hearing. See N.J.S.A. 2C:14-15(a).

9

And unlike in the context of an FPO, there are two different grounds that a superior court judge can rely on to issue a TPO.

The first available ground on which to grant a TPO is <u>discretionary</u>. <u>See</u> N.J.S.A. 2C:14-15(a). N.J.S.A. 2C:14-15(a) provides that

> [a] judge of the Superior Court <u>may enter</u> an emergency ex parte order <u>when necessary to protect the safety and well-being of an alleged victim</u> on whose behalf the relief is sought. The court may grant any relief necessary to protect the safety and well-being of an alleged victim.
>
> [(emphases added).]

Under that ground, a judge <u>may</u> issue a TPO and "grant any relief necessary to protect the safety and well-being of an alleged victim." <u>Ibid.</u>

In contrast, the second available ground to grant a TPO is <u>mandatory</u>. <u>See</u> N.J.S.A. 2C:14-15(b). N.J.S.A. 2C:14-15(b) provides that

> [t]he court <u>shall</u>, upon consideration of the application, <u>order emergency ex parte relief in the nature of a [TPO] if the court determines that the applicant is a victim</u> of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, and qualifies for such relief pursuant to [N.J.S.A. 2C:14-14].
>
> [(emphases added).]

Under that ground, a judge <u>must</u> issue a TPO if that judge determines that the applicant is indeed a victim of a predicate act under SASPA.

10

After deciding that a TPO is warranted, the judge may turn to N.J.S.A. 2C:14-15(e) which sets forth a non-exhaustive list of initial available emergency protections that a TPO judge may impose, pending a final hearing, to protect the safety and well-being of the alleged victim.

After an emergency ex parte TPO has been issued on either of the two abovementioned grounds, N.J.S.A. 2C:14-15(a) or (b), and after the TPO judge has fashioned any appropriate temporary emergency relief pending an FPO hearing, stage two quickly occurs. An FPO hearing then "shall be held in the Superior Court within 10 days of the filing of" a TPO application. N.J.S.A. 2C:14-16(a).

2.

At the second stage, i.e., the FPO stage, an alleged victim must prove by a preponderance of the evidence (compared to the TPO stage's easier "good cause" standard) the "allegations made in the application for a protective order." N.J.S.A. 2C:14-16(a). Applications for protective orders pertain to facts supporting the victim's allegation that a respondent committed one of the predicate acts under SASPA. See N.J.S.A. 2C:14-14(a)(1) (defining the predicate acts).

In general, as in all bench trials, an FPO judge will consider a multitude of factors when conducting the final hearing, such as credibility of the

11

witnesses, physical evidence, and so on. Without limiting an FPO judge's

ability to weigh the relevant evidence at the final hearing, SASPA identifies

only two non-exhaustive "factors" that an FPO judge must "consider."

N.J.S.A. 2C:14-16(a)(1) and (2) explain that

> [t]he court shall consider but not be limited to the
> following factors:
>
>> (1) the occurrence of one or more acts of
>> nonconsensual sexual contact, sexual
>> penetration, or lewdness, or any attempt at such
>> conduct, against the alleged victim; and
>>
>> (2) the possibility of future risk to the safety or
>> well-being of the alleged victim.
>
> [(emphases added).]

A full reading of SASPA's text requires an FPO judge to "consider" each factor

for different reasons: factor one deals with the predicate act and relates to the

relief that must be issued under N.J.S.A. 2C:14-16(e); factor two concerns

possible future risk to the victim's safety or well-being and relates to N.J.S.A.

2C:14-16(f)'s permissive additional relief.

As to the first mandatory factor, N.J.S.A. 2C:14-16(a)(1) requires an

FPO judge to "consider" "the occurrence of one or more acts of nonconsensual

sexual contact, sexual penetration, or lewdness, or any attempt at such

conduct, against the alleged victim." The parties and amici agree that an FPO

12

cannot be issued unless the judge finds, or an admission is made, that a respondent committed at least one predicate act enumerated under SASPA.

That finding controls. In comparison to the initial TPO stage where a TPO judge has the authority to issue a TPO on two different grounds -- one discretionary "when necessary to protect the safety and well-being of an alleged victim," N.J.S.A. 2C:14-15(a), and one mandatory when "the court determines that the applicant is a victim" of a predicate act, N.J.S.A. 2C:14-15(b) -- the Legislature emphasized that an FPO judge shall rely on only one ground at the final hearing. See N.J.S.A. 2C:14-16(e). N.J.S.A. 2C:14-16(e) provides that an FPO

> shall be issued only after a finding or an admission is made that the respondent committed [a predicate] act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim.
>
> [(emphases added).]

And unlike what is required to obtain an FRO under the PDVA -- that both a predicate act occurred and the FRO is necessary to prevent further abuse -- once an FPO judge in a SASPA case finds that a respondent committed one of the predicate acts, or there is such an admission, N.J.S.A. 2C:14-16(e) requires that the FPO "shall be issued" and shall automatically:

> (1) prohibit the respondent from having contact with the victim; and

13

> (2) prohibit the respondent from committing any future act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the victim.

No speculation is required about what may or may not happen in the future. The FPO must be issued.

As to the second factor, N.J.S.A. 2C:14-16(a)(2) requires that an FPO judge also "consider" "the possibility of future risk to the safety or well-being of the alleged victim." SASPA does not define the words "consider," "possibility," "future," "risk," "safety," or "well-being." I agree with the majority that we must afford those terms their "generally accepted meaning." Ante at ___ (slip op. at 22) (quoting N.J.S.A. 1:1-1). To "consider" means to "think carefully about (something), typically before making a decision[;] . . . [to] take (something) into account when making an assessment or judgment." New Oxford American Dictionary 370 (3d ed. 2010). Under N.J.S.A. 2C:14-16(e), an FPO "shall be issued only after a finding or an admission is made that the respondent committed" a predicate act. If the Legislature intended that an FPO be issued only after the FPO judge finds that a predicate act occurred plus an additional finding that there exists a "possibility of future risk to the [victim's] safety or well-being," it would have said so. See DiProspero, 183 N.J. at 492 ("We cannot 'write in an additional qualification which the

14

Legislature pointedly omitted in drafting its own enactment . . . .'"  (quoting

Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952))).  No such

language is included in SASPA.

B.

Why then did the Legislature require FPO judges to, among other

"factors," "consider" the "possibility of future risk to the safety or well-being

of the alleged victim"?  It is my view that under SASPA, an FPO judge "shall

consider" the "possibility" of such "future risk," and any other relevant

evidence, when fashioning enhanced relief authorized by N.J.S.A. 2C:14-16(f).

My view is supported by the text of SASPA, the definition of "consider," and

how the Legislature used the word "consider" in the PDVA.

N.J.S.A. 2C:14-16(f) provides:

> In addition to any relief provided to the victim under
> [N.J.S.A. 2C:14-16(e), an FPO] issued pursuant to this
> section may include, but is not limited to, the following
> relief:
>
> > (1) an order prohibiting the respondent from
> > entering the residence, property, school, or place
> > of employment of the victim or the victim's
> > family or household members, and requiring the
> > respondent to stay away from any specified place
> > that is named in the order and is frequented
> > regularly by the victim or the victim's family or
> > household members;
> >
> > (2) an order prohibiting the respondent from
> > having any contact with the victim or others,

15

including an order forbidding the respondent from personally or through an agent initiating any communication likely to cause annoyance or alarm including, but not limited to, personal, written, or telephone contact, or contact via electronic device, with the victim or the victim's family members or their employers, employees, or fellow workers; an employee or volunteer of a sexual assault response entity that is providing services to a victim; or others with whom communication would be likely to cause annoyance or alarm to the victim;

(3) an order prohibiting the respondent from stalking or following, or threatening to harm, stalk or follow, the victim;

(4) an order prohibiting the respondent from committing or attempting to commit an act of harassment, including an act of cyber-harassment, against the victim; and

(5) any other relief that the court deems appropriate.

[(emphases added).]

Those added protections provide more relief to the victim beyond the automatic protection issued after a finding is made that a predicate act occurred -- i.e., prohibiting a respondent from contacting the victim, N.J.S.A. 2C:14-16(e)(1), and from committing further prohibited acts, id. at (e)(2). An FPO judge has broad discretion to grant additional protections based on all the evidence introduced at the hearing, whether premised on the nature and facts

16

of the predicate act, a "future risk to [a victim's] safety or well-being," or any other consideration under the facts of each case.

Reference to considering "factors" is not new when it comes to protective and restraining orders. As I pointed out, the PDVA requires FRO judges to "consider" "factors." In the PDVA context, like here, consideration of enumerated "factors" is also for different purposes.

Specifically, under the PDVA, the Legislature directed that FRO judges "shall consider but not be limited to [six] factors." N.J.S.A. 2C:25-29(a)(1) to (6).[5] To obtain an FRO under the PDVA, a victim need not establish each

---

[5] These non-exhaustive factors are:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1) to (6).]

numbered factor. Rather, when determining whether a victim has proven a predicate act under the PDVA, FRO judges consider primarily two of those six factors, see Silver, 387 N.J. Super. at 126 (explaining that the FRO judge "must consider the evidence in light of whether there is a previous history of domestic violence [(factor one)], and whether there exists immediate danger to person or property [(factor two)]"). And when determining whether the "relief [is] necessary to prevent further abuse," N.J.S.A. 2C:25-29(b), which is an additional element that is not expressly required under SASPA, FRO judges consider all six factors, see Silver, 387 N.J. Super. at 127.

Thus, as illustrated by the definition of "consider," and its use in both the PDVA and SASPA, the language in SASPA that "[t]he court shall consider but not be limited to the following factors," on its own, does not expressly set forth the grounds for issuance of an FPO. Rather, it merely sets forth circumstances the judge should "think carefully about" or "take . . . into account" when fashioning additional relief in the order. See New Oxford American Dictionary at 370.

### III.

Although the text is clear, the legislative history and New Jersey's existing public policy also support my reading of SASPA. In enacting SASPA, the Legislature focused on victims of nonconsensual sexual predicate acts.

18

New Jersey has increased protections for sexual assault victims.  See State v. Chambers, 252 N.J. 561, 583-86 (2023) ("Our courts have recognized that, in sexual assault cases, 'the wellbeing of . . . victims demands heightened protection' because there is a 'likelihood of emotional trauma and mental distress.'"  (omission in original) (quoting State v. D.R.H., 127 N.J. 249, 259 (1992))).  SASPA further provides for that enhanced protection.

In line with those goals, SASPA "help[s] better respond" to sexual assault victims.  A. Judiciary Comm. Meeting on Sexual Assault Survivor Protection Act of 2015, A. 4078 (Jan. 15, 2015) (statement of Valerie Vainieri Huttle), https://njleg.state.nj.us/archived-media/2014/AJU-meeting-list/media-player?committee=AJU&agendaDate= 2015-01-15-10:00:00&agendaType=M&av=A.  According to Assemblywoman Valerie Huttle, SASPA's lead sponsor, "a critical issue [is] helping victims become survivors and helping them heal" and therefore SASPA is designed to help accomplish those goals and ensure that survivors feel safe.  Ibid.  Accordingly, SASPA imposes a "minimal burden and confusion for the courts."  Ibid.  Given this legislative history, it is of no surprise that to obtain an FPO, a victim need only prove that a predicate act occurred, not that at some time in the future the victim might experience the "possibility of future risk to [their] safety or well-being."  Any other reading -- even if the standard is "permissive and easily

19

satisfied," ante at ___ (slip op. at 3) -- would contravene the Legislature's intent and impose more "burden[s]" and "confusion" on the courts and litigants.

Moreover, the legislative history surrounding VASPA emphasizes VASPA's focus on protecting victims and ensuring straightforward access to legal remedies. Assemblywoman Michele Matsikoudis commented about the 2023 amendments that "[t]he law is now on the side of victims seeking protection through the courts. Victims who have been targeted by strangers, neighbors and acquaintances will finally be able to experience the peace of mind that protective orders provide." Office of the Governor, Press Release: Governor Murphy Signs Legislation Expanding Access to Temporary Protective Orders (July 24, 2023) (emphasis added). Elaborating on the benefits of VASPA's protections, Senator Linda Greenstein stated that "[t]his law will empower victims to take legal action and obtain a [protective] order, providing them with a crucial tool to proactively protect themselves before a stalking situation escalates." Ibid.

Consistent with SASPA's and VASPA's purpose and New Jersey's public policy to protect victims of sexual violence, academic research also supports the need to provide accessible legal remedies in the form of protective orders for victims. Studies show that victims of sexual assault perceive orders of

20

protection as effective and crucial to their safety.  See Jane K. Stoever, Enjoining Abuse:  The Case for Indefinite Domestic Violence Protection Orders, 67 Vand. L. Rev. 1015, 1066 (2014).  For instance, "obtaining a protection order is deeply empowering because it entails asserting one's own needs, standing up to the abuser, and enlisting a potent institutional ally." Sally F. Goldfarb, Reconceiving Civil Protection Orders for Domestic Violence:  Can Law Help End the Abuse Without Ending the Relationship?, 29 Cardozo L. Rev. 1487, 1515 (2008).  "Moreover, victims often report that civil protection orders were instrumental in helping them recover and improve their overall feelings of well-being after an attack."  Shawn E. Fields, Debunking the Stranger-in-the-Bushes Myth:  The Case for Sexual Assault Protection Orders, 2017 Wis. L. Rev. 429, 460 (2017) (quoting Hayley Jodoin, Closing the Loophole in Massachusetts Protection Order Legislation to Provide Greater Security for Victims of Sexual Assault:  Has Massachusetts General Laws Chapter 258E Closed It Enough?, 17 Suffolk J. Trial & App. Advoc. 102, 111 (2012)).

## IV.

Application of those legal principles to the facts of this case is straightforward, although with one caveat:  unlike a typical SASPA case, in which an FPO judge conducts one hearing and the record on appeal pertains to

21

that hearing, here the victim testified at two FPO hearings before different FPO judges over three years apart from each other. The predicate act occurred on June 26 into June 27, 2018. On July 2, 2018, the victim filed for and received a TPO under SASPA. Thereafter, as previously explained, the first FPO judge conducted a final hearing on August 2, 2018. The second FPO judge, i.e., the remand judge, conducted a second final hearing on November 8, 2021.

At the first FPO hearing, the victim did not testify about the "possibility of future risk to [her] safety or well-being," besides her one statement explaining that she filed for an ex parte TPO because she "[did not] feel safe without it." The victim was not questioned about "future risk" nor did she produce evidence that would satisfy the test proffered by the majority today -- "whether there is a chance that a [victim] may be exposed to physical danger, risk, or injury, or may be exposed to something emotionally unwelcome or unpleasant that could make [her] feel uncomfortable, unhealthy, or unhappy." Ante at ___ (slip op. at 23). And based on the testimony that was provided, the first FPO judge found it was clear that respondent did not call, text, contact, or interact with the victim after the predicate act occurred. Thus, at the first FPO hearing, there was no showing that the victim may, in the future, be "exposed to physical danger, risk, or injury," or "exposed to something emotionally

22

unwelcome or unpleasant that could make [her] feel uncomfortable, unhealthy, or unhappy." See ibid.

As this Court stated in C.R. I, the "factual findings [at the first FPO hearing] appear to counter [the victim's] establishing [the second factor] of SASPA." 248 N.J. at 448. There were no facts identified by the judge to find that there existed a "possibility of future risk to the safety or well-being of the alleged victim"; instead, the facts appeared contrary to such a finding. Ibid. If the victim had presented evidence to show that there is a "possibility of future risk to [her] safety or well-being," there would have been no reason to remand the case on this issue.[6] Instead, in its remand instructions, the Court instructed the trial court to "make additional findings of fact that support a determination

---

[6] Similarly, even if the first FPO judge did not make a finding on factor two of SASPA, had the record contained evidence that factor two was satisfied, the C.R. I. Court would not have needed to remand for additional findings of fact on this factor. See A.M.C. v. P.B., 447 N.J. Super. 402, 418, 422 (App. Div. 2016) (reversing without a remand the trial judge's decision not to issue an FRO under the PDVA because the record supported issuance of the FRO); J.D. v. A.M.W., 475 N.J. Super. 306, 315 (App. Div. 2023) (reversing the decision not to issue an FRO under the PDVA and remanding for entry of the FRO because the record contained "ample evidence" that the plaintiff needed the FRO to prevent further abuse); cf. J.S. v. D.S., 448 N.J. Super. 17, 23-24 (App. Div. 2016) (vacating an FRO under the PDVA and remanding the matter for a determination of whether the predicate act of domestic violence occurred because courts "have an obligation to ensure the FRO was legitimately entered" and nothing in the record supported keeping the FRO in effect). Although these are PDVA cases, the principle that an appellate court can reverse without remanding and issue an FRO if supported by credible evidence in the record, applies in equal force to SASPA FPOs.

23

either that the [second factor] has been satisfied, or not, in deciding whether to issue the [FPO]." C.R. I, 248 N.J. at 448.

The first FPO judge in fact appropriately entered the FPO after finding the victim "ha[d] been subjected to nonconsensual sexual activity." Adhering to N.J.S.A. 2C:14-16(e)(1) and (2), the judge prohibited respondent from having "contact with the victim," and from committing further acts of "nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the victim." It was error, however, for the first FPO judge to find there existed a "possibility of future risk to the [victim's] safety or well-being" only because respondent has "been subjected to legal fees and may now harbor a grudge against [the victim] which would probably not have occurred but for these proceedings." Exercising discretion under N.J.S.A. 2C:14-16(f)(3) and (4), he prohibited respondent from "stalk[ing], follow[ing][,] or harass[ing] the victim."[7] But as the Court stated in C.R. I, "[i]t cannot be that simply filing for a protective order is sufficient" to satisfy N.J.S.A. 2C:14-16(a)(2), the "possibility of future risk to the safety or well-being of the alleged victim." 248 N.J. at 448. A finding based on N.J.S.A.

_____

[7] The record is unclear about whether the first FPO judge included further protection in accordance with N.J.S.A. 2C:14-16(f)(1) (barring respondent from specific locations) and N.J.S.A. 2C:14-16(f)(2) (prohibiting respondent from specific types of contact).

2C:14-16(a)(2) must be grounded in credible evidence since it allows a judge to enter further protections in the FPO.

Thus, I would hold that at the FPO stage, the "possibility of future risk to the safety or well-being of [an] alleged victim" exists if (1) in the future, (2) the alleged victim may face either (a) a risk to safety -- physical injury, loss, or damage, or (b) a risk to their well-being -- injury to the state of being happy or healthy. And that finding then impacts the judge's discretion to impose additional relief in the FPO under N.J.S.A. 2C:14-16(f).

The victim here had the rare opportunity to testify again at a second FPO hearing. Instead of having to speculate about the "possibility of future risk to [her] safety or well-being," she testified about how the incident affected her three years and three months later, an opportunity -- as the majority correctly points out -- that is typically unavailable for SASPA victims. Ante at ___ (slip op. at 32-33). Her testimony the second time around crystalized the impact of the incident.

Looking back on the occurrence of the predicate act, the victim explained how she: (1) will always be "traumatized" by what happened; (2) has "terrible intimacy issues" and "can't date"; and (3) has trouble sleeping and making friends due to her trust issues. As to her "well-being" she elaborated:

25

> I am affected by what happened every day. I've seen multiple therapists and I lay in bed at night[,] and I can't sleep because I still feel like I'm in the garage sometimes. . . .
>
> I have a hard time making friends because I don't trust my friends anymore. . . . it destroyed me, honestly.
>
> Like, I've lost my sense of self-worth. I lost everything. I feel like -- some days, I feel like I'll never not be in that garage, honestly. Like, I wonder how I can ever not be traumatized by this and I don't think that's a possibility.
>
> [(emphases added).]

In response to being asked, "do you fear for your safety and the possibility of harm from [respondent]," the victim explained:

> I do. I really, I do. I think the only reason I have any sort of peace of mind is because I know I have this temporary right now and I'm so terrified that if I didn't have it, he would be angry that I've spent three years just asking for this.
>
> Just asking for a sense of security. I think he would definitely harass me for challenging it. I feel like every time -- I can't even begin to explain the, like, terror that I feel every day when I am unsure of my surroundings.
>
> I can't even -- I have a hard time even going shopping by myself because what if something happens? How will I defend myself? And if there's no protective order, then he has no consequences. . . .
>
> He could harass me over the Internet. He could come to my residence, come to my work, find me anywhere.
>
> [(emphases added).]

26

As opposed to speculating about the possible risk to her safety or well-being, the victim's testimony amplified, albeit more than three-years later, the actual risk to her "safety" or "well-being."  Thus, the victim's inability to provide evidence at the first FPO hearing, coupled with the additional testimony she provided at the second FPO hearing, underscores the difficulty of proving the "possibility of future risk to [a victim's] safety or well-being" by a preponderance of the evidence ten days after application for an emergency ex parte TPO.  Contrary to the majority's holding, having the benefit of hindsight in this case illustrates how N.J.S.A. 2C:14-16(a)(2)'s standard will not always be "easily satisfied."  Ante at ___ (slip op. at 3, 22).[8]

---

[8]  It is unsurprising that, in cases where a TPO was filed shortly after a predicate act occurs, a victim may lack proof showing the "possibility of future risk to the safety or well-being of the alleged victim."  It is common for victims of sexual violence to experience post-traumatic stress disorder (PTSD), depression, anxiety, increased suicide risk, disordered eating, substance abuse, difficulty functioning, and other psychological conditions.  See Amy C. Graham et al., Sexual Assault, Campus Resource Use, and Psychological Distress in Undergraduate Women, 36 J. Interpersonal Violence, 10361, 10362-63 (2021) (generally discussing the psychological effects of sexual assault on women).  Moreover, women who were drinking alcohol prior to a sexual assault -- like the victim here -- are more likely to experience psychological distress.  Id. at 10363; see also Karen Rothman et al., Sexual Assault Among Women in College:  Immediate and Long-Term Associations with Mental Health, Psychological Functioning, and Romantic Relationships, 36 J. Interpersonal Violence, 9600, 9602, 9615 (2021) (emphasizing that sexual assault is "consistently linked" with PTSD "within days" of the event, unreliable memory, fear and anxiety, suicidality, and depression); Emily R.

Nevertheless, and like the first FPO judge, the remand judge also found that respondent committed one or more predicate acts. The remand judge recognized SASPA's lenient standard and requirement to "consider" the "possibility of future risk to the [victim's] safety or well-being." Relying on this new testimony, the remand judge stated:

> the [v]ictim testified that she has seen several therapists to deal with the trauma that she has endured. She has ongoing difficulty sleeping. She has intimacy issues. The long-term effects are real and traumatizing to her. It is clear that without the [FPO], any efforts she has made in therapy could be eviscerated. Her testimony that the only peace of mind she has is the security that this order has provided to her, with the attendant consequences to [respondent] should he violate the [FPO], is legitimate and truthful. There is a significant risk to her psychological well-being should this order not remain in effect.

Thus, in line with my reading of SASPA, there is sufficient credible evidence to support the finding that there is a risk to the victim's "safety" and "well-being," which supports the continued added protections afforded by N.J.S.A. 2C:14-16(f).

---

Dworkin et al., Associations Between Sexual Assault and Suicidal Thoughts and Behavior: A Meta-Analysis, 14 Psych. Trauma: Theory, Rsch., Prac., & Pol'y, 1208, 1211 (2020) (same). Such psychological consequences impact a victim's ability to present evidence by a preponderance of the evidence in support of an FPO.

## V.

In sum, it is my view that to obtain an FPO, SASPA <u>does not</u> require a victim to <u>also</u> demonstrate, beyond proving the commission of a predicate act, that without an FPO there exists a "possibility of future risk to the [victim's] safety or well-being." The victim here established by a preponderance of the evidence, at both FPO hearings, that respondent committed one or more predicate acts. The judges then correctly found that the victim is entitled to an FPO prohibiting the respondent from contacting the victim and committing further predicate acts under N.J.S.A. 2C:14-16(e). The "possibility" of what might or might not happen in the future is simply one factor among many others that the judge "shall consider" when fashioning additional relief in the FPO; it is not an element of proof. That is exactly why the remand judge, after hearing more testimony, allowed the additional restrictions under N.J.S.A. 2C:14-16(f)(3) and (4) to remain in effect.

Accordingly, I would uphold the FPO and those referenced additional restrictions.